UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT D. YIM,

    Petitioner,

v.

JOE A. LIZARRAGA,

    Respondent.

Case No. 16-cv-03610-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Robert Yim seeks federal habeas relief from his state convictions for murder and attempted murder on the grounds that (i) the trial court violated his right to self-representation; (ii) his sentence constitutes cruel and unusual punishment; and (iii) defense counsel rendered ineffective assistance.[1]  Because Claims (i) and (ii) lack merit, they are DENIED.  The ineffective assistance claims are DISMISSED as untimely.  But even if I were to review the merits of the dismissed claims, they would be denied.

## BACKGROUND

In 2010, Yim shot Samuel Nava in the head, killing him.  (Ans., Dkt. No. 23-8 State Appellate Opinion) at 79.)[2]  The facts were crisply summarized by the state appellate

---

[1] Yim's claim of prosecutorial misconduct was dismissed at his request.  (Dkt. No. 22.)

[2] *People v. Yim,* No. A141404, 2015 WL 3658083, at *1 (Cal. Ct. App. Jun. 15, 2015).

court:

> During the afternoon of May 3, 2010, Daveon Taylor was driving in Hayward with three friends, including Samuel Nava III. On the way toward Nava's home, they saw Yim, a stranger to them, sitting on a park bench with a young woman (Veronica Rodriguez). Yim stared at them with a mean expression on his face.
>
> Taylor stopped the car and asked Yim, 'Is there a problem?' Yim walked toward the car in an aggressive manner and said, 'Yes, there is,' and repeatedly asked, 'What up, nigga?' At some point — either before or after Yim approached Taylor's car — Yim went to Rodriguez's car and retrieved his gun.
>
> Afraid, Taylor quickly drove away. Concerned that Yim could follow them to Nava's house, Taylor headed instead for Union City, stopping at a red light in the left-turn lane at the intersection of Mission Boulevard and Industrial Parkway. Meanwhile, Yim and Rodriguez left the park in Rodriguez's car and also headed toward Union City, where Yim lived.
>
> At the stoplight at Industrial and Mission, Yim and Rodriguez were in the left-turn lane two cars behind Taylor's vehicle. Yim got out of the car. Unaware Yim was there, Taylor made a U-turn and saw Yim on the center median. As he continued to drive in Yim's direction, Yim stepped into the street, pulled out his gun, and fired several shots at Taylor's car, shattering the front and rear windshields; one bullet struck Nava in the back of the head and killed him.

(Ans., Dkt. No. 23-8 at 79.[3])

An Alameda County Superior Court jury found Yim guilty of the second degree murder of Nava, and of the attempted murder of the three others. It also found true a sentencing enhancement allegation. (*Id.* at 79-80.) Yim was sentenced to 127 years to life in state prison. (*Id.* at 80.) On appeal, his sentence was reduced to 87 years to life, but his appeal was otherwise denied. His other attempts to overturn his conviction were unsuccessful. This federal habeas petition followed.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

---

[3] The page numbers cited are those generated by the Court's electronic filing system.

2

this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

**i.  Denial of Motion for Self-Representation**

On the day of sentencing, Yim asked for the substitution of counsel on grounds that he wanted to file a motion for a new trial, which his current counsel declined to do. (Ans., Dkt. No. 23-8 at 84.) The court found the motion untimely and that Yim had received

3

adequate representation. (*Id.*) Yim asked to represent himself and to file his new trial motion. (*Id.*) The court acknowledged his self-representation request and directed the clerk to file the new trial motion. (*Id.* at 84-85.) It appears from the transcript that the trial court sentenced him without ruling on the motions. (*Id.* at 84.) The clerk's docket and minutes indicate that the motions were denied. (*Id.* at 85.) Yim alleges the trial court violated his right to self-representation.

This claim was rejected on appeal. Yim first claimed that the self-representation motion was implicitly granted but that he was not allowed to exercise his right. This was unpersuasive. Even if his interpretation of the record was correct, he failed to show prejudicial error:

> The record indicates no possibility that Yim would have received a more favorable outcome if he had been allowed to argue his new trial motion. The new trial motion was based on the alleged ineffectiveness of his trial attorney, which the court had already rejected after hearing from Yim during the *Marsden* [motion to substitute counsel] proceedings; Yim does not challenge this ruling or explain why the new trial motion might have been granted if Yim had argued it. Nor does the record indicate any possibility he would have received a more favorable outcome if he had represented himself at sentencing. Yim was given the opportunity to speak at the sentencing hearing, but he merely stated that he shot at Taylor's car to defend himself. In short, there is no probability that self-representation would have resulted in a new trial, a more lenient sentence, or any other outcome more favorable than what he obtained, so the error Yim alleges was harmless.

(Ans., Dkt. No. 23-8 at 87-88.)

Yim also claimed, in the alternative, that the motion was implicitly denied. This claim was rejected. A motion for self-representation at sentencing must be raised at a reasonable time before sentencing. Because Yim's motion was made on the day of sentencing, it was untimely. At that point, self-representation "is no longer a matter of right, but is subject to the court's discretion." (*Id.* at 88.) The trial court's implicit denial was thought harmless, for the reasons stated above. (*Id.* at 89.)

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*

4

*v. California*, 422 U.S. 806, 832 (1975). A defendant's request to represent himself must, however, be made in timely fashion; "a timeliness element in a *Faretta* request is clearly established federal law as determined by the Supreme Court." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005) (internal quotation marks and citation omitted). "[B]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely," however, "other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Id.*

In *Marshall*, the defendant had made his *Faretta* request on the morning of trial. *Marshall*, 395 F.3d at 1061. The Ninth Circuit found no constitutional error in the state court's denial of the request. *Id.* ("Because the timing of [petitioner's] request fell well inside the 'weeks before trial' standard for timeliness established by *Faretta*, the [California] court of appeal's finding of untimeliness clearly comports with Supreme Court precedent."). In so holding, the Ninth Circuit further observed that the petitioner had "presented no facts to show that his last-minute request was reasonable," and that "he could have made his request much earlier than the day of trial." *Id.* at 1061.

Habeas relief is not warranted here. Yim's request was made on the day of sentencing, not, as required by *Faretta*, "weeks before trial." The state court reasonably denied his claim. *See Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990) (no habeas relief for the denial of a *Faretta* request made on the day of sentencing); *Ramirez v. Yates*, 71 F. Supp. 3d 1100, 1118 (N.D. Cal. Oct. 21, 2014) (same). Because the state court's denial was reasonable, it is entitled to AEDPA deference. This claim is DENIED.

To the extent that Yim contends his constitutional rights were violated when the trial court implicitly denied or failed to hear his new trial motion, such claim is DENIED. There is no clearly established constitutional right to move for a new trial, or to have such a motion granted. "The Constitution itself, of course, makes no mention of new trials." *Herrera v. Collins*, 506 U.S. 390, 407 (1993) (declining to find that Texas's refusal to entertain a new trial motion that was untimely under state rules "transgresses a principle of fundamental fairness 'rooted in the traditions and conscience of our people.'") Rather, the

5

right to file a new trial motion is a state statutory right, not a constitutional one. *See Gupta v. Beard*, No. CV 14-1709-CJC KK, 2015 WL 1470859, at *27 (C.D. Cal. Mar. 30, 2015) (quoting *People v. Dillard*, 168 Cal. App. 2d 158, 167 (Cal. Ct. App. 1959)) ("A 'motion for new trial in a criminal case is a [California] statutory right'"). Violations of state law are not remediable on federal habeas review, even if state law were erroneously applied or interpreted. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006). Furthermore, Yim does not provide any details regarding the motion itself, or reasons it should have been granted.

To the extent that Yim alleges he lacked effective counsel when he raised his new trial motion or that the court's failure to grant his motion to provide new counsel, such claim is DENIED. He has not provided any support for such a claim, which is entirely conclusory. He therefore has not shown that counsel's performance was deficient and that that deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984).

**ii.     Sentence**

Yim claims his sentence, even after it was reduced from 127 to 87 years to life, violates the Eighth Amendment. (Am. Pet., Dkt. No. 15 at 5.) This claim was rejected on appeal. In light of the murder of Nava and the attempted murders of the others, Yim's sentence was not excessive under the Eighth Amendment. (Dkt. No. 23-8 at 91-92.)

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983). Yet successful challenges to the proportionality of particular sentences are "exceedingly rare" outside "the context of capital punishment." *Id.* at 289-90. Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle — the precise contours of which are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (internal quotation marks and citations omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate'

to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

The Supreme Court upheld a life sentence without the possibility of parole for an offender whose sole felony conviction was for possessing 672 grams of cocaine. *Harmelin*, 501 U.S. at 961, 994. In *Andrade*, the Supreme Court, under the highly deferential AEDPA standard, upheld a sentence of two consecutive terms of 25 years to life for the nonviolent theft of $150 worth of videotapes. 538 U.S. at 77.

Habeas relief is unwarranted. Yim was sentenced to 87 years to life for murder and three counts of attempted murder, the equivalent of life without parole. If, as in *Harmelin*, a life sentence for a single <u>nonviolent</u> drug possession conviction did not violate the Eighth Amendment, and if, as in *Andrade*, a sentence of 50 years to life for the <u>nonviolent</u> theft of videotapes also did not, then Yim's life sentence for murder and attempted murder also cannot. This claim is DENIED.

### iii. Assistance of Counsel

Yim claims defense counsel rendered ineffective assistance when he failed to (i) convey a plea bargain offer, and (ii) allow petitioner to testify. These claims were not raised on direct appeal nor in Yim's original federal habeas petition. That petition was stayed at his request so that he could exhaust these claims. (Dkt. No. 10.) He filed petitions in the state superior and appellate courts, which denied his claims as untimely. (Ans., Dkt. No. 23-8 at 121-122, 124.) His claims were summarily denied by the state supreme court. (*Id.* at 146.) The present federal habeas action was reopened at Yim's request, after which he filed an amended petition containing the new claims. (Dkt. Nos. 14 and 15.)

Respondent moves to dismiss these new claims as untimely.

7

### a. Standard of Review

Federal habeas petitions must be filed within one year of the latest of the date on which: (i) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (ii) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (iii) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (iv) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1). This one-year clock starts ticking 90 days after direct state review is final. "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

AEDPA's one-year statute of limitations in section 2244(d)(1) applies to each claim in a habeas application on an individual basis. *Mardesich v. Cate*, 668 F.3d 1164, 1169-1171 (9th Cir. 2012) (claim-by-claim approach consistent with Supreme Court dicta in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005), which suggested that section 2244(d)(1)(B)-(D) required claim-by-claim consideration).

"An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (new coerced confession claim did not relate back to the original petition that raised only a factually distinct Confrontation Clause claim). A claim relates back to the date of the original pleading, only if the original and amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" *Id.* at 655 (quoting Fed. R. Civ. P. 15(c)(2)). Only if the original and amended petition state claims that are tied to a common core of operative facts will the new claim in an amended petition relate back to the filing date of the original petition. *See id.* at 664-665. *Mayle* explicitly rejected the

8

proposition that the "same 'conduct, transaction, or occurrence' [means the] same 'trial, conviction, or sentence.'" *Id.* at 664.

   **b. Analysis**

Direct review of Yim's convictions ended on September 9, 2015 when the state supreme court denied his petition for direct review. Ninety days later (December 8, 2015), the one-year AEDPA clock started ticking. Yim then had until December 9, 2016 to file a timely federal habeas petition. The petition he filed on June 27, 2016 was timely filed, as were the claims it contained, the same claims the Court just addressed on the merits. In order for his second set of claims (counsel's failure to tell him of a plea bargain and to allow him to testify, his "IAC" claims) to be timely, they must relate back to the timely claims in the original petition (that the trial court failed to allow him to represent himself at sentencing and that his sentence violated the Eighth Amendment).

None qualify. His new IAC claims do not relate back to his Eighth Amendment claim. The facts and the legal underpinnings are entirely different. Likewise, his new IAC claims do not arise from a core of operative facts that are in common with his timely claims. His *Faretta* claim is based on the trial court's denial of his motion. The acts of the court are in no way related, either in time or causally, to the acts of his attorney in failing to inform him of a plea offer or the refusal to let Yim testify. Accordingly, Yim's ineffective assistance of counsel claims are DISMISSED as untimely.

If I were to review the claims, they would be denied as meritless. The record shows that (i) counsel told Yim of whatever plea offer was available;[4] (ii) counsel told the court that Yim "did not want that deal"; and (iii) after counsel told the court of (i) and (ii), Yim was given the opportunity to "place anything else on the record" but said nothing about counsel's statements. (Am. Pet., Dkt. No. 15 at 13-14.) Yim's failure in court to dispute

---

[4] Yim claims counsel failed to inform him of another offer, this one for "19 years," which Yim says he would have accepted. (Am. Pet., Dkt. No. 15 at 10.) Trial counsel vigorously disputes Yim's allegations, in a letter appended to the petition. (*Id.* at 12.) Yim presents no evidence that there was such an offer and his failure to dispute in court counsel's statements about the offer that was made puts an end to his claim.

9

counsel's statements would doom any claim that counsel failed to inform him of a plea offer, if the Court were to review the claim on its merits.

Yim's claim that counsel failed to allow him to testify would also fail were it to be reviewed on the merits. The record indicates that Yim waived his right to testify. Waiver of the right to testify at one's trial may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or to notify the court of his desire to do so. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer. *See id.* A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094-95 (9th Cir. 1999); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). Yim has shown no evidence that he spoke to the court, insisted on testifying, discharged his lawyer at the relevant time, or otherwise indicated that he wanted to testify.

## CONCLUSION

Yim's claims that the trial court erred in denying his request to represent himself and that his sentence violates the Eighth Amendment are DENIED. His ineffective assistance of counsel claims are DISMISSED as untimely. These claims would fail on the merits, if the Court were to examine them on that basis.

The state court's adjudication of Yim's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law. Further, the state court's findings did not result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Yim may seek a certificate of appealability from the Ninth Circuit.

10

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** June 26, 2018



WILLIAM H. ORRICK
United States District Judge